All right, hear ye, hear ye, hear ye. This Honorable Public Court of the 2nd District is now open, pursuant to adjournment. The Honorable Robert T. McLaren, presiding. Please be seated. Your Honor, this is the first case of the afternoon, called 211-607, Crestmoor One, LLC, and anchored by all concepts intervening, Avalon v. Drake Oakbrook Holdings, LLC, at all. On behalf of the Avalon, Mr. Marty Moore, for anchored by all concepts. Mr. Gerard Lurie, on behalf of Crestmoor One, ceding his time to his co-counsel. On behalf of the Avalon, Ms. Paula Lawrence. Thank you. Is it Gerald or Gerard? Gerald. Thank you. Okay. Mr. Moore. Thank you, Your Honors. May it please the Court. My name is Marty Moore, on behalf of anchored by all concepts. I'd like to thank the Court for the opportunity to appear before it and give oral arguments in this case. Your Honor, this case may appear somewhat complex, but the issue before this Court on interlocking, is resolved by a simple determination, and that determination is whether Breach and Spank consented to arbitration. The United States Supreme Court recently, in the Granite Rock Company case, stated that the first principle which underscores all of its arbitration decisions is that arbitration is strictly a matter of consent. Arbitrators have no authority over a party unless a party has consented to arbitration. In the AT&T versus Communications of America workers case, Supreme Court case, it says arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to resolve these disputes. Let me ask you a question, please. Yes, Your Honor. What were the trial court's findings of fact relative to whether or not your client consented to arbitration? Your Honor, the trial court did not enter any findings of fact regarding finding of consent at all. In fact, Your Honor, the trial court never made any rulings as to whether there was a consent to arbitration, and that is why this case is here on appeal. What was the apparent rationale given by the trial court? Yes. The trial court relied on the rationale of closely related doctrine. Now, this rationale has been applied to form selection clauses, but it's inapplicable to arbitration clauses for two reasons. Number one, it violates the fundamental principle enunciated by the Supreme Court which governs arbitration,  courts have been directed since the first options case to find agreements to arbitrate on the basis of ordinary state law principles which govern the formation of contracts. Now, being closely related to a document or a party is not a principle that governs the formation of contracts, and thus the closely related doctrine, again, violates that first principle of consent. Further, the closely related doctrine has only ever been applied in form selection cases. Wyndham was unable to cite any cases in her brief where this closely related doctrine applied to arbitration provisions. Some courts have addressed the question, and such as the Lee case and the Smooth Line case in the Second Circuit dismissed it in a footnote. The Lee case specifically said to apply this closely related doctrine to arbitration provisions would violate that fundamental principle that undergirds arbitration law. And to hold us off for just a second, I mean, it may or may not be totally accurate, but as I understand it, the arbitration agreement originally between Drake Holdings and Wyndham clearly provided that any dispute would be subject to arbitration, correct? That was the original agreement. Yes, Your Honor. Drake Holdings and Regents entered into an assignment agreement which included language that Regents was taking an absolute assignment in Drake Holdings, the HMA, which included the arbitration agreement, right? Why does that not run to Anchor Bible? First, it would have to be binding on Regents in order for even the thought of Anchor Bible. If they took an absolute assignment, wouldn't it have been binding on Regents? Well, that language, Your Honor, which says absolute assignment is found there in Section 4 of the Assignment of Management Agreement. It reads this way. Absolute and present assignment is only part of that sentence. If you read the rest of the sentence, it says constitute an absolute and present assignment and security interest, provided that Regents shall have, lender, Regents, shall have no right under the assignment to enforce the provisions of the Management Agreement until asked and worse in default. And if you look in that section in the light of the other provisions of the Assignment Agreement, it clearly states that lender, Regents, does not assume any of the obligations. And then again in Section 9, nothing in this document, I'm quoting here, lender shall render lender liable for any debts or obligations of the Asinor, which was the Draco-Prick Holdings Company. Was it an arbitration agreement, a debt, or an obligation? Certainly, the duty to arbitrate is an obligation. Yes, Your Honor. And the clear language here in the Assignment Agreement clearly shows that the parties did not intend for any of these obligations to be imposing on Regents. Obviously, your argument is and has to be that Anchor Bible is not subject to this arbitration agreement. And you're arguing some language in the contract. Didn't Anchor Bible file a motion to substitute as plaintiff in place of Crestmore and indicated that it was, quote, unquote, the real party of interest and was seeking to take the position of Crestmore? Isn't that what Anchor Bible did? Anchor Bible, I believe they did file a motion to substitute as plaintiff, and then they attached along with that their proposed amended complaint, which has never been filed with the court yet. But in fact, here we have a situation where unless Regents is bound to arbitration, none of its successors can be bound. And so the court, the circuit court below, did not find Regents bound under ordinary contract principles. Rather, it applied this closely related doctrine. And therefore, unless Regents is bound, whether Anchor Bible concepts or Crestmore are bound, we don't get to that question unless we pass the first question, and that's whether Regents consented. Is it your position that under contract-based theories, a non-party to an agreement can never be bound to an agreement? Certainly not, Your Honor. Ordinary principles of state contract law definitely are applied to bind non-signatories to these documents. I mean, we have doctrines like incorporation by reference, assumption, alter ego, other things listed. Now, conspicuously absent from those lists is a reference to the closely related doctrine. I mean, we have the Seventh Circuit enunciating these doctrines in the Zurich American Insurance case, and they themselves were one of the first cases to have the closely related doctrine. But that strictly applies to foreign selection clauses. So the absence of that doctrine in those lists is telling us regarding its application to arbitration provisions. Now, referencing the incorporation by reference arguments, again, we look at the assignment agreement. And as this Court has stated, we look to interpret the intent of the parties from the language of the document. And so in this incorporation by reference language, which Wyndham cites, here it's found in recital C, which states a true and correct copy of which the HMA is attached here to his exhibit A incorporated herein. The importance of the parties' intentions can't be overstressed in this case. But doesn't it say that the HMA gave regents no rights to enforce the provisions of the HMA until Drake Holdings was in default? Did Drake Holdings go into default? Drake Holdings did go into default. And so the question before is, has regents tried to enforce the rights of the HMA? Now, after the owner went into default, we had a situation where regents and Wyndham discussed various things, and specifically not that regents would come in and take over the owner's position under the HMA, but rather that the hotel would be orderly shuttered and terminate the operations, and that this property would go into a foreclosure proceeding. Did they do that on July 27, 2009, when regents assigned a promissory note in the mortgage to regents' acquisition? So they took on all of those obligations, the note and everything, did they not? So how could regents not have been bound by this arbitration? That's, I guess, where my sticking point is. Regents took this assignment of management agreement back in January 2010. This was a collateral assignment. Specifically in the SNDA, it states that Wyndham agreed to this collateral assignment. And a collateral assignment does not include the obligations binding upon the parties. And unless and until here in Section 2 of the assignment agreement, unless and until regents affirmatively gave written notice to Wyndham that it was now taking possession of the property, now under the idea that the property was going to continue to be used as a hotel, unless and until regents gave that notice, then there was no obligations on regents' part, certainly not on Crestmore's part on behalf of that, to any of the obligations of the HMA. Regents never gave that notice. In fact, regents gave notice, and Wyndham and regents came to, there's dispute about the fact, came to an assignment of agreement to terminate these agreements and to shut down the hotel in an orderly fashion. We do not find consent, Your Honor, in the terms of these documents to any arbitration. And without consent, Your Honor, there can be no compelled arbitration. Your conclusion in your brief claims the trial court never found that consent was given. And then you asked that the judgment be reversed. Why are you not asking that it be vacated and remanded for further findings? Your Honor, consent in this case is found as a matter of law based on the interpretation of the documents. And this court, as the appellate court, is obviously the authority on issues of matter of law. There's no relevant question of fact as to whether there was consent. It's based on the documents. And in applying the ordinary principles of contract law and this court's rule of 366 power, we would ask that this court in its de novo review find that the parties did not consent based upon the clear language of these documents and that the court therefore reverse the lower court's order compelling arbitration and staying the proceedings pending arbitration. Counsel, isn't there a subtle difference between arguing that the trial court must find that the party consented to the arbitration agreement as opposed to the trial court finding that the party is bound to arbitrate? Is there a little bit of a subtle distinction there? It depends how we look at it, Your Honor. If I can understand the question, whether they're bound to arbitration based on the closely related doctrine and whether they've consented to arbitration. It's two different things. I mean, you know, there's no consent in writing in this case. Nobody's arguing that, are they? No, I don't believe anyone's arguing that there's consent in writing, although opposing counsel may differ with that point. We see the first options case, which is illustrative and analogous to this situation. There we had parties closely related to an arbitration agreement. Mr. and Mrs. Kaplan wholly owned the company MKI Investments. MKI Investments entered into an agreement with First Options of Chicago. That agreement contained an arbitration clause. First Options then sought to compel MKI Investments to arbitrate. But not only MKI Investments, but also Mr. and Mrs. Kaplan as whole owners of that company. Now, the Supreme Court did not say, you know, these parties are closely related, because clearly they were closely related. The Supreme Court specifically said you have to find consent not on the basis that they're closely related, but on the basis that these parties, under ordinary principles of state contract law, which govern the formation of contracts, find consent on that. And in this case, as well as the first options case, the presumption is that there is no arbitration agreement. That they have to find consent based upon clear and unmistakable evidence. Since the lower court below, in this case, specifically compelled arbitration of the issues of arbitrability, the burden of proof is to find consent by clear and unmistakable evidence. And I would submit, Your Honors, that under the terms of these documents, as a matter of law, that is an impossible burden to bear. So there's no other way that somebody who did not sign an arbitration agreement can be bound by an arbitration agreement. Is that what you're saying? You must find it according to ordinary principles of state contract law. Now, there are certainly principles that would apply. The Assumption Doctrine, Agency, Estoppel, Vail Peterson, Corporation by Reference. Yes. And all of these principles must be judged according to the intent of the parties to find the consent. And the documents, when documents clearly state that a signer agrees that lender does not assume any of the obligations or duties of the absentee, the intent of the parties is clear that there is clearly no consent. Is it your position that Regents was not bound to arbitrate? Yes, Your Honor. That is our position. Tell us succinctly why you believe that to be the case. Our position is that Regents is not bound to arbitrate because they did not consent to arbitrate. And the Court has often said that you cannot compel a party to arbitration unless you found that they're bound to arbitration. So even if you take a general assignment and you agree to assume all the debts and obligations and every other contract, as long as you don't have a separate consent, you're not bound to arbitrate. Is that your position? No, Your Honor. In this case, Regents did not take a general assignment. The Assignment of Management Agreement is specifically an assignment for security. This was not a transfer of any presently exercisable rights on behalf of Regents. And it was rather a limited assignment, such as banks, Regents as the bank, lending the hotel owner this money, took a collateral interest in both the property in the form of a mortgage and other documents, including the management agreement. This collateral assignment could be likened to a normal situation where you have a bank loaning money to a homeowner. Say the homeowner has contracts for the up-care of its yard. If the bank takes a security interest in that kind of a contract, now once the homeowner fails to pay the bank and the security interest and the yard contract, can we say that, oh, now the bank is on the hook to pay that yard contract, even though when it took a security interest in? No, if the bank steps in and tells the yard contract people, keep performing, then the bank would be bound. But until they do that, they are not bound. And therefore, our position is that Regents is not bound to arbitration. Therefore, none of the appellants in this case can be bound for arbitration. So you're saying Regents did not enter into an assignment agreement with Drake Holdings in which it took an absolute and present assignment of Drake Holdings' rights and interest in the HMA. You're saying they did not do that. They did not take, Your Honor, an absolute present assignment and delegation of duties, Your Honor. The clear language of the document in Section 2 and Section 3 clearly shows that parties did not intend for any duties to be transferred to Regents on that point. You're saying that the assignment was only of the benefits and not the burdens? The assignment was of a collateral interest. And at default, Regents had the option to then request the benefits and then acquire the burdens. Until then, they did not have any benefits or burdens under the contract until they exercised that right. And that is why Wyndham expressly consented to this collateral assignment. Because until Regents exercised that option to come in and say, yes, Wyndham, you must keep operating this hotel, we are now going to exercise our right to have you perform your duties. You're saying that they executed a security interest which gave them the option to accept the benefits and the burdens. And if they didn't accept the benefits and the burdens, then they couldn't have consented to arbitration. That is exactly right, Justice McClaren. Yes. Didn't Regents enter into an assignment agreement with Drake Holdings? Did it not do that? Yes, an assignment of management agreement with Drake Holdings. So didn't it take an absolute and present assignment of Drake Holdings' rights and interests in the HMA? It was not an absolute and present assignment and delegation of duties. That absolute and present assignment language, if it's interpreted as a delegation of duties, would conflict with the other provisions of this assignment of management agreement, which clearly and expressly state that no obligations were conferred. And if that's the case, Your Honor, we have a conflict and this Court would have to interpret it according to the party's intent. So it had no rights in the HMA? It had no rights in the HMA until a default happened and until it, therefore, exercised its right to bind Regents or bind with them to the HMA. And then, obviously, the obligations would come at that point as it exercised its rights, Your Honor. Are you saying that there's one document and one document only that we should reference and then, based upon that document, determine whether or not it indicates whether or not there was an option to decide whether to accept the benefits and burdens and then make a determination whether or not there was ever an exercise of that option? Your Honor, there's no dispute as to whether there was an exercise of that option. The parties would have had to give written notice that it's affirmatively exercised its right. There's no real factual disputes in this case, Your Honor. Counsel, listen to me. What I was asking was, you're suggesting that our analysis is, look at this one document. See if the document indicates that it's assigning a security interest that is or does create an option to accept the benefits and burdens. And then, if we determine, even if it's agreed or uncontroverted that you didn't exercise or Regents didn't exercise the option, then we should find in your favor or rule in your favor. It's not. Is that correct? Is that the way we should analyze this case, or is there some different way in which we should analyze this case? I believe, if I'm understanding your question, Your Honor, that is the proper way to analyze this case. Look at the terms of this assignment of management agreement. Regents has never signed a document which includes an arbitration provision. Unless they're found to be bound by an arbitration provision, they cannot be compelled to arbitrate. The burden on Wyndham is to show that agreement by clear and unmistakable evidence. So, unless, Your Honor, you can find clear and unmistakable evidence in this document, the assignment of management agreement, that Regents has consented to arbitration, the lower court's order compelling arbitration, saying the foreclosure action proceedings pending arbitration must be reversed because arbitration cannot be compelled without consent. Well, then are you saying that inside the document there is verbiage relative to creating an option and an exercise of that option, which, in the event that it's exercised, will accept the benefits and burdens, or are you saying that as a matter of interpretive law of an assignment of a security interest that that is what happens? Your Honor, under both there is verbiage and also there is, as a matter of law, an assignment, a collateral assignment. Is that exactly what you explained there? Section 2 specifically states that verbiage, which requires managers to give written notice that is affirmatively exercising its right to take possession of the property. So there is the verbiage which gives that option. And again, again, again, in Section 4, we have the verbiage that lenders shall have no right under this assignment to enforce provisions. That's clear language until a default. So, therefore, the language is clear. The nature of a collateral assignment is clear. And, thus, given this interpretation of the document, Your Honor, to find that clear and unmistakable evidence that regions consented to arbitration would be, I believe, impossible, Your Honor. Did Ankel Feigl agree to defend and indemnify Crestmore? Yes, Your Honor. And that agreement, again, has no relevance, essentially, on the primary issue before this Court. That's regions. Which is whether regions consented to arbitration. If there are no further questions, Your Honor. Thank you, sir. You have a chance to make rebuttal. Thank you. Ms. Moritz. Yes, Your Honor. Are you like apes and humans? We're closely related because 98% of our DNA is the same? I think we have some factual similarities but not the doctrinal one, which is what brings us here today. Your Honor, I am Paula Moritz on behalf of the Applee Windham Hotel Management.  I would suggest that the Court look at the point that Mr. Justice Hudson raised on the difference between a consent to arbitration in the present sense and an agreement to be bound. Because, of course, the courts that have decided this issue look carefully at whether there is an agreement to arbitrate, not whether the parties currently consent to arbitration. If that were the test, then rarely would an issue arrive at this Court's doorstep because I'm sure parties are only here when they have no longer consented to arbitration. In the case before this Court, there was no question below that there was a written, signed arbitration agreement in the hotel management agreement that bound successors and assigns. And the second uncontested issue before the Court below was that there were no contract formation questions regarding the assignment agreements that tracked the transfer of rights and obligations of the parties. So before the Court below, the undisputed facts contained fully integrated documents. None of the parties chose to offer evidence of intent or other proof such as trade usage beyond the agreements that they had signed and transferred. And on that complete record, in answer to Mr. Justice Hudson's other question, the Court did indeed make findings. In the transcript at page 41, Judge Wheaton noted that she had looked at the analysis given factually by Judge Trauger in an earlier part of this case and looked at what the parties had submitted to her raised the issue of arbitrability, and she carefully left the interpretation of the agreements to the arbitrator as the parties provided in the arbitration agreement. Once she recognized an uncontested facial agreement that did not present any questions of contract formation. And I would submit to the Court that that is the appropriate approach to the issues that are before this Court. She had written evidence of an arbitration agreement and then a detailed chart of the transfers. We made an extra copy for the Court in the hope that it would be helpful if I may tender it to the clerk. It's already in the record at page A405 through 408, but it is the chart of transfers through the agreements. In this chart, which was before Judge Wheaton below, the Court will see that the first entry was the transfer from the owner to Regents Bank. And that's the assignment that Judge Shostak was asking about, attaching and expressly incorporating the hotel management agreement between Wyndham and the owner. We had originally cited that to paragraph D. It's, in fact, paragraph C. But that is the express language that it incorporated the hotel management agreement and, in fact, attached it. Beyond that, the assignment signed in January of 2008 reflected that it was obtained at the request of the bank and constituted an absolute and present assignment and security interest binding upon successors and assigns. On the face of the chart before you at Record A-405, the parties on the appellant's side transferred those rights and obligations, first to two affiliates of Regents and then to Anchor Bible Concepts at the end. And following those definitions, the Court below properly determined that incorporation by reference brought the assignments in line so that the arbitration issue was fairly sent to the arbitrators. The appropriate inquiry then, once there is a prima facie agreement to arbitrate, is to examine simply whether the arbitration agreement existed, not to interpret the underlying documents. That level of inquiry is properly left to the arbitrator, and that is carefully what Judge Wheaton did. She was quite explicit about it. She was mindful of not taking on the arbitrator's function. And she concluded that the questions of contract validity, arbitrability, and the proper parties should be presented to the arbitrator. We had noted for Judge Wheaton that a Tennessee court had carefully looked at these same issues and not impaired the ability of the next forum to decide the case. And that's what the court was referring to when she said she thought... And then E. It was affected in paragraph C of the assignment, which appears in the record at A128, where it attaches and expressly incorporates the hotel management agreement, which is the agreement with the arbitration clause. It attached and expressly incorporated it into the assignment from the owner to regents and noted that the assignment was an absolute and present assignment and security interest in the hotel management agreement. So the words expressly are on the face of the assignment. Your opponent relies on the Valero marketing and supply versus Baldwin construction case by basically saying you're referencing a document doesn't incorporate the entire document. How do you respond to that? In this case, Your Honor, the language was quite explicit on the face of the assignment because it provided in paragraph C that they were attaching and incorporating the hotel management agreement into the assignment of management agreement. That makes the language different from Valero. And it also provides that the assignment is an absolute and present assignment and security interest and notes that they're waiting only for regions own rights for the default to occur. So the wording of the assignment itself is different from the language in Valero. What is it? Are you done answering the question? I am done. What's the faulty logic in Mr. Moore's argument that we look at the document, determine if it creates a security interest with an option and that because the option was never exercised that arbitration isn't called for? At a fundamental level, Your Honor, that's an inquiry for the arbitrator. Once there is a facial agreement that assigns and incorporates an agreement incorporating an arbitration clause, that becomes a question of arbitrability. And in this case, it is expressly delegated to Jams under the arbitration clause. But as a matter of contract law, to go a little bit further, this assignment was drafted by regions. It has specific language at the front about its insistence on the hotel management agreement and its accepting of an absolute and present assignment of the arbitration agreement. And then there's what we would submit as a boilerplate at the end that says, and we're not responsible for any of the owner's obligations, which we think referred to other obligations. But all of that would require evidence that is not before this court and was not placed before the court below. Is it possible that you're both right? Yes, Your Honor, and that would make the forum for discussing the validity and implications of the assignment. The forum would be the Jams arbitration. And that is why, because of the preference for arbitration in a dispute, or what is the legal support for that argument? The legal support would be the incorporation of the Jams arbitration clause, as the court distinguished Granite City and referred to in Preston. The use of a Jams arbitration clause expressly reserves for the arbitrator questions of validity and arbitrability. That makes this different from cases where there are no such clauses. And because that is reserved for the arbitrator, the proper inquiry is exactly what Judge Wheaton engaged in here. Was there a written arbitration agreement? Were there fully integrated written assignments that placed those obligations into other hands and then bound the parties to the arbitration clause? That approach, have I answered Your Honor's question? You did, but I have another follow-up question. In the far right column of your chart, it says, Anchor defines the transferred loan documents to include the loan agreement, the note, the mortgage, all other documents made and entered into by Regents Bank and their successors in the science to evidence, govern, and or secure the loan. That came from which documents? That comes from page S.A. 26, Your Honor, and that is from the proposed complaint tendered by Anchor Bible in their motion for leave to intervene into this action. And you're characterizing that as some type of a judicial admission, or how does this come into play? Yes, we are, Your Honor, because it was in that document where Anchor set forth why it was coming before the court. It said it had taken an assignment of all of Regents Bank's interests, and that's why it was entitled to foreclose on this hotel property. It said nothing about contingency or anything like that? It didn't, Your Honor, and yet in the language that it adopted, it noted that even documents that bore on securing the loan were part of what it had assumed from Regents Bank. So if we follow the earlier argument that Mr. Moore made, that this was simply a conditional assignment, that it would spring into effect... I thought Mr. Moore said the proposed complaint wasn't filed. Was it filed? Yes, Your Honor, it was, and it appears in the appendix. Okay. It was filed as an exhibit to the motion, and the motion was granted. Whether... It was filed in the record as an exhibit, not as a pleading? Yes, Your Honor, as a proposed pleading, although Anchor was given leave then to file it, and at that point, the stay intervened. So that may explain Mr. Moore's comment that it was never officially filed. So as part of the argument to Anchor, you can't be in for a penny and not for a pound? Does that seem to be part of what you're saying? Yes, Your Honor. You can't pick and choose which rights and obligations you're going to uphold and which rights and obligations you're not when you take this kind of an assignment? Well, and particularly when we place their rights in the context of the written agreements they signed, because as you can see in the fourth column there, the right title and interest in the loan documents and the loan documents routinely for each of the prior assignments included the assignment of the management agreement. The circuit court's decision to stay the matter before her pending arbitration and to compel Regents Anchor and Crestmore to proceed to arbitration was soundly based on the incorporation by reference doctrine, which she did reference in her transcript remarks. The issue of the underlying contracts and their validity are still before the arbitrator who has them. Those issues fall under the arbitration agreement. The issue, the dispute here, falls within the arbitration agreement. Yes, Your Honor, it does, because it arises out of the hotel management agreement and the operation of the hotel. Under the hotel management agreement, Wyndham has the right to manage this property as a hotel for an additional 23 years. That agreement has never been terminated. But is there any problem with the fact that it's no longer being used as a hotel? There is not, Your Honor. The contractual rights survive, and the only reason it is not being currently used as a hotel is that Regents failed to provide the funding it was required to supply as the assignee of the hotel management agreement. The Regents initially moved for the appointment of a, it has to become mortgagee in possession, and then it changed that to a receivership, and that is what is currently in place. So the building is there, but not operational as a hotel without funding. Your Honor, the decision that the court below made complied with all of the standards imposed under the Federal Arbitration Act and decisions of this court and the Illinois Supreme Court interpreting the Federal Arbitration Act. Her decision was narrowly tailored, soundly based. It examined the undisputed arbitration agreement before her. It examined the undisputed executed agreements and left further interpretation after the facial one in the hands of the arbitrator who awaits us at jams. We appreciate the court's attention to this matter. Thank you. Your Honor, this court has been asked to overlook the clear language of the assignment of management agreement and to overlook the Supreme Court's clear direction that arbitration is strictly a matter of law. We're still arguing that somehow this closely related doctrine finds consent, which is not an ordinary principle of state contract law. Wendham has raised this agreement. Your Honor, we do not dispute the fact that Wendham made an agreement to arbitrate with the owner of the property. However, as the FAA directs, unless there is no issue as to whether there is an agreement binding the parties, the court must proceed to determine whether there is an agreement binding the parties. In other words, an agreement is not a piece of paper. An agreement must be found by ordinary state contract principles that govern the formation of contracts. And finding an agreement by regions and Wendham to arbitrate in this case is the issue. My recollection, based upon my notes, I don't claim that they're perfect, therefore my notes may be wrong, but I thought you said that the security interest or the assignment of the security interest didn't provide for arbitration. And about a minute and a half ago, you said that the assignment of the MHA didn't provide for arbitration. Yes, sorry. Now, did I hear you right both times or did I write this incorrectly? Did you say the first time that it was the security interest that didn't provide for arbitration, and now you're saying that the MHA didn't provide for arbitration? The security interest did not provide for arbitration. I'm not specifically sure what I specifically said, but to clarify for the court, the HMA has an arbitration clause in it. That's between owner and Wendham. The assignment of management agreement between owner and regions does not have an arbitration clause in it, if that answers your question, Your Honor. We have this incorporation by reference provision, which opposing counsel has referenced again. It's in the recitals provision. If we want to look at the intent of parties, as this circuit has stated, recitals provisions are there for the explanation of the circumstances of a contract. Parties put promises in the provisions. The recitals are generally nonbinding. So to find the intent of the parties in that incorporation, we see that it's there to reference the right that regions had upon default, only upon default, to exercise the owner's rights under the HMA. Wendham would like to characterize this as at the moment this assignment agreement happened, regions therefore became bound to all the obligations of the HMA. Such interpretation would render the documents such as the SNDA, which subordinated Wendham's rights to payment to regions' rights, useless if regions is actually the person who's supposed to be paying Wendham's obligations. Then we brought up the question of whether this document was filed. It was not filed, and Anchor Bible has never been given leave to file this amended complaint, and certainly the amended complaint would be consistent with the facts in this case. I'd like to understand that your argument is that your client was not bound by arbitration because your client decided not to prosecute the issue of possession. If I understand correctly of the question, Your Honor, regions is not bound to arbitration because regions never decided to exercise the owner's rights under the HMA. That is our argument, yes, Your Honor. Is that the only way in which arbitration can commence? There are other theories where arbitration can commence, but they have to find consent. That is the theory that Wendham has been arguing. What if Wendham decided that it wanted to arbitrate on the basis that your client or regions violated the agreement? The way you've argued before us today, I believe, your claim is, is that the only way in which your client could be bound is if your client decided to prosecute under it. And, therefore, couldn't be bound by it for purposes of a defense. No, Your Honor. Our argument is that without being bound to all the provisions of the HMA, not just to sue on that document, but they never agreed to take on the rights or the duties of the assignment of management of the HMA. And, therefore, they can't be bound by that, Your Honor. If there are no further questions, Your Honor, we thank you for your consideration in this case. Thank you. We'll take the matter under advisement. There will be a short recess. There's another case in the call.